NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL 138, INTERNATIONAL UNION
OF OPERATING ENGINEERS,
AFL–CIO, Respondent.

No. 41, Docket 31177.

United States Court of Appeals
Second Circuit.

Argued Sept. 25, 1967.

Decided Nov. 27, 1967.

Warren M. Davison, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Leonard M. Wagman, Atty., N. L. R. B., on the brief), for petitioner.

William J. Corcoran, of Corcoran & Brady, New York City, for respondent.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its supplemental order which issued after proceedings held pursuant to a remand by this court.[1] The Board ordered Local 138, International Union of Operating Engineers, to reimburse nonmembers for a portion of permit fees collected from them as a condition of referral or employment between June 9, 1958 and July 1, 1963.[2] We grant enforcement.

In its original decision in this case, the Board found, *inter alia*, that Local 138 had violated the National Labor Relations Act, 29 U.S.C. § 141 et seq., by operating a discriminatory hiring and job referral system and by exacting an unlawful fee of nonmembers for use of the system.[3] The Board ordered the union to cease and desist from maintaining any practice or enforcing any agreement with employers which unlawfully gives members preference over nonmembers in job referrals, or which conditions referrals on good standing in the union. Local 138 was also ordered to "reimburse all

individual nonmembers for permit or service fees unlawfully exacted from them as a condition of referral or employment with interest thereon at six percent * * * ", on the ground that the union could not lawfully exact a fee for the use of a discriminatorily operated hiring and referral system.[4]

■ On petition to review and cross-petition to enforce this original order, we did not find substantial evidence to support a finding of blanket discrimination against nonmembers in the operation of the union's hiring hall, but held that there was evidence of some discrimination, sufficient to justify the cease and desist portion of the order. We thought that the Board had gone too far, however, in ordering that the permit fees be returned in toto, since there were indications that the nonmembers received some value from their use of the hiring hall. Enforcement of that portion of the order was therefore denied.[5]

Although we thought that the union should be allowed to keep some part of the permit fees collected, we agreed with the Board that the fees, which were in an amount equal to the monthly dues paid by the union's members, were excessive.[6] We noted that

The fees were charged solely for the use of the hiring hall. Yet of each $10.00 monthly payment, $2.00 was remitted by the local union to the International. While a union might under proper accounting procedures include in the cost of operating a hiring hall

1. Local 138, International Union of Operating Engineers v. NLRB, 321 F.2d 130 (2d Cir. 1963).

2. J. J. Hagerty, Inc., 153 NLRB 1374 (1965).

3. J. J. Hagerty, Inc., 139 NLRB 633 (1962). The union had a collective bargaining agreement with an employers' association making it the "sole and exclusive source of referrals of applicants for employment."

4. Other aspects of the order, discussed in our earlier opinion, supra note 1, are not here relevant. The full factual background of the case is set out in our earlier opinion.

5. As we noted, the Board's order for total reimbursement might well have been in the nature of a penalty, which is, of course, beyond the power of the Board. See, e. g., Local 60, United Brotherhood of Carpenters, etc. v. NLRB, 365 U.S. 651, 655, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961).

6. The trial Examiner and two members of the Board were of the opinion that a permit fee for use of the hiring hall equal in amount to the dues paid by members is necessarily unlawful absent evidence that the fee is reasonably relevant to the cost of operating the hiring hall. We agree, for reasons stated below.

some reasonable percentage of the union's general expenses, the union has not argued before us that its charges to nonmembers were based on anything except an intention to exact from them the amount paid by members. This the union could not do under the guise of charging for its services as an employment agency.[7]

We remanded the case to the Board for further findings, stating that

The Board should consider on remand what proportion of the fees which were paid were reasonably related to the value of the services provided by the union, having in mind also the cost to the union of performing such services. Any excess over that amount could properly be ordered returned to the men who paid it.*

* The Board will, of course, have in mind our rejection of the finding of blanket discrimination in determining whether such an order is warranted.[8]

After proceedings held pursuant to the remand, the Trial Examiner issued a supplemental decision recommending that the union be ordered to refund $3.50 of every $10.00 permit fee received during the pertinent period, with interest at six percent. He reached the $3.50 figure by adopting and applying the formula suggested by the General Counsel for determining what proportion of the fees was reasonably related to the value of the services. The General Counsel's formula permitted the union to claim as allocable to the hiring hall all union expenses except those which are "institutional" in character. The union was allowed to claim, for example, all of its office expenses, but assessments imposed by the International, litigation expenses, and other expenses unrelated to the union's bargaining agent and hiring hall activities, such as expenses of dinners, meetings, and conventions, were not allowed.

The Board adopted the findings, conclusions, and recommendations of the Trial Examiner, finding the cost allocation formula acceptable. It concluded that the permit fee was "excessive," stating that in making its determination, it had been mindful of our rejection of its earlier finding of blanket discrimination against permit men.[9]

The General Counsel submitted detailed calculations before the Trial Examiner showing the union's various expenses and explaining what amounts might, in his view, fairly be allocated to the running of the hiring hall. His calculations went virtually unchallenged, for the union refused to discuss the accounting issues involved.[10]

The union's position before the Trial Examiner, the Board, and this court has been that under our mandate on remand the permit men could be charged the fair value of *all* services received from the union. The union urges upon us that hiring hall costs cannot reasonably be separated from other expenses, and that permit men receive all benefits received by union members except the right to attend union meetings. It follows, the union contends, that permit men may be charged fees equal to the dues paid by union members.

The union clearly misinterprets our earlier opinion. When this case was first before us, we assumed that the permit fees were charged solely for the use of the hiring hall, because that was the only service for which the union had a right to charge the permit men.[11] Thus when we remanded for further findings, ordering the Board to consider what proportion of the fees was reasonably related to the "value of the services provided by the union," we were referring to the value of the hiring hall services. The Board's interpretation of our mandate

7. 321 F.2d at 135.

8. 321 F.2d at 136.

9. Nonmembers using the hiring hall.

10. We think that the cost allocation formula was fair to the union. The union was allowed to charge entirely to the running of the hiring hall some costs, such as office expenses, which might be thought to reflect more than just the cost of running the hiring hall.

11. See the language quoted supra at note 7.

was correct. Furthermore, we have no reason to doubt that we were correct in limiting the permit fees to an amount reflecting the value of the hiring hall services only.[12]

We do not question the union's claim that permit men receive benefits not only from the hiring hall, but from the union's other activities as well. The difficulty with the union's contention that permit men should pay through their fees for any additional benefits received is that Congress has provided a different way for unions to meet this problem. The proviso to § 8(a) (3) of the National Labor Relations Act[13] authorizes unions and employers to enter into union security agreements for the limited purpose of compelling employees to pay union dues and fees.[14] Moreover, the Supreme Court has made it clear that employers cannot refuse to bargain over any union security proposal which is confined to this purpose, whether the proposal be for a "closed shop," "agency shop," or some other arrangement designed to meet the "free rider" problem which Congress recognized in the proviso to § 8(a) (3) of the Act. NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).[15]

Local 138 has obtained, through bargaining, the right to run an exclusive hiring hall for the employers involved in this case. Such an arrangement is clearly lawful.[16] But the union may not use the exclusive hiring hall to restrain or coerce employees in the exercise of their rights under § 157 of Title 29, United States Code,[17] or to cause an employer to discriminate against an employee so as to encourage or discourage membership in any labor organization.[18] We think it is clear that charging permit men a fee for the use of the hiring hall which is equivalent to the dues paid by union members on the theory that permit men receive all of the benefits of union membership will necessarily encourage union membership in violation of the permit men's § 157 rights; likewise, it will encourage employers to discriminate against employees so as to encourage union membership.[19] Unless the union can find some justification in the statute for its practice, then, it has committed an unfair labor practice. No such justification is available. We have just discussed how Congress has provided unions with a specific means for meeting the problem of "free riders" which Local 138 has here tried to meet through the exclusive hiring hall. If the union wants union security, it may bargain for it. It may not short-circuit the system Congress has established by attempting to gain union security through an exclusive hiring hall. The union's interpretation of

12. Cf. Local 1351, Steamship Clerks and Checkers, etc. v. NLRB, 117 U.S.App. D.C. 304, 329 F.2d 259 (1964), cert. denied 377 U.S. 993, 84 S.Ct. 1921, 12 L.Ed. 2d 1046, sub nom. Houston Maritime Association, Inc. v. NLRB.

13. 49 Stat. 452, as amended 61 Stat. 140, 65 Stat. 601, 73 Stat. 525, 542, 545; 29 U.S.C.A. § 158(a) (3).

14. See Radio Officers' Union, etc. v. NLRB, 347 U.S. 17, 40–41, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

15. The employer is compelled to bargain under § 8(a) (5) of the Act, 29 U.S.C.A. § 158(a) (5).

16. Local 357, International Brotherhood of Teamsters, etc. v. NLRB, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961).

17. 29 U.S.C.A. § 157 gives employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and [also] the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

18. These are unfair labor practices under 29 U.S.C.A. § 158(b) (1) and (2).

19. We do not mean to imply that we agree with the union that the permit men received all of the benefits of union membership. Clearly they did not. The union's expenses included such items as "members' death benefit payments," "florist and funeral cards," "Labor Day parade," and "soft ball team."

the Act would render purposeless the proviso to § 8(a) (3).[20]

■ The union argues that even if its practice of charging permit fees equal to union dues was unlawful, the Board's order is in the nature of a penalty, and it was improper to impose interest on the amount to be reimbursed. We think that the union is wrong on both of these points. Since the union was committing an unfair labor practice to the extent it charged the permit men a fee not reasonably related to the cost of providing the job referral service, the Board was amply justified in ordering the union to reimburse the permit men in the amount of fees paid in excess of the value of the hiring hall services. Such an order clearly meets the requirement that a reimbursement order be remedial.[21]

The order is clearly remedial because it reimburses the permit men for fees

illegally charged them; and of course in such a situation the permit men have lost the use of their monies. It is appropriate, therefore, that the union be required to pay interest to compensate them for this loss. The Board adopted the policy of imposing interest on remedial back pay orders in Isis Plumbing and Heating Co., 138 NLRB 716, and first applied the policy to the reimbursement of unlawfully exacted initiation fees, dues and assessments in Seafarers' International Union of No. America, 138 NLRB 1142. The Courts of Appeals in at least seven circuits, including this one, have upheld this policy with respect to back pay orders.[22] Here, as in the back pay cases, the employees have lost the use of their monies, and it is only equitable to award them interest.

Enforcement granted.

20. The union claims support in the Board's decision in Local 825, International Union of Operating Engineers, 137 NLRB 1043 (1962). In that case, the permit fee was $9.00 monthly; union dues were $10.00, $1.10 of which was remitted to the International. It is not clear what the Board would have done in that case had part of the permit fees been remitted to the International, as they were here. And even if the union's interpretation of Local 825 were correct, the Board, when it adjudicates, has the power to make a reversal of doctrine applicable to the case before it. NLRB v. A. P. W. Products Co., 316 F.2d 899 (2d Cir. 1963). Moreover, the union's argument that it relied upon Local 825 is weak at best. That case was decided in 1962. The permit fees involved here ran from 1959 to mid-1963.

We are strengthened in our opinion as to the nature of the statutory scheme by evidence that in permitting unions to bargain for exclusive hiring halls, Congress intended that they should not be able to create a closed shop by the use of this device, but should serve simply as an employment agency and nothing more. See Local 357, International Brotherhood of Teamsters, etc. v. NLRB, 365 U.S. 667, 673, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961). (Quotation of the views of Senator Taft.)

We express no opinion as to what collective bargaining agreements are adequate to obtain union security under the Supreme Court's holding in NLRB v.

General Motors Corp., supra, except to say that the hiring hall arrangement in this case clearly was inadequate.

21. See Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. NLRB, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961), and Building Material Teamsters, Local 282, etc. v. NLRB, 275 F.2d 909 (2d Cir. 1960). Cf. NLRB v. Cadillac Wire Corp., 290 F.2d 261 (2d Cir. 1961).

In arguing that the order amounts to a penalty, the union relies on Morrison-Knudsen Co. v. NLRB, 275 F.2d 914 (2d Cir. 1960), cert. denied 366 U.S. 909, 81 S.Ct. 1082, 6 L.Ed.2d 234 (1961). In that case, we held that the Board could not order an employer to reimburse employees for union dues paid by them. Here the union received the benefit and must make the reimbursement.

22. International Brotherhood of Operative Potters v. NLRB, 116 U.S.App.D.C. 35, 320 F.2d 757 (1963); Reserve Supply Corp. of Long Island, Inc. v. NLRB, 317 F.2d 785 (2d Cir. 1963); NLRB v. Globe Products Corp., 322 F.2d 694 (4th Cir. 1963); NLRB v. George E. Light Boat Storage, Inc., 373 F.2d 762 (5th Cir. 1967); Philip Carey Mfg. Co., Miami Cabinet Div. v. NLRB, 331 F.2d 720 (6th Cir. 1964), cert. denied 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92; Revere Copper and Brass, Inc. v. NLRB, 324 F.2d 132 (7th Cir. 1963); Marshfield Steel Company v. NLRB, 324 F.2d 333 (8th Cir. 1963).