**INTERNATIONAL LADIES' GARMENT WORKERS UNION, LOCAL 415–475, AFL–CIO, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 72–1676.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 29, 1974.

Decided June 28, 1974.

---

Allan M. Elster, North Miami Beach, Fla., for petitioner.

Abigail Cooley Baskir, Atty., National Labor Relations Board, with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Acting Asst. Gen. Counsel, National Labor Relations Board, and Glen M. Bendixsen, Chief of Sp. Litigation, National Labor Relations Board, at the time the brief was filed, were on the brief for respondent.

Before LEVENTHAL, MacKINNON and WILKEY, Circuit Judges.

MacKINNON, Circuit Judge:

The International Ladies' Garment Workers Union, Local 415, AFL-CIO (the Union) has petitioned this court to review the withdrawal of a complaint by a Regional Director of the National Labor Relations Board (the Board) prior to hearing as part of an informal settlement agreement entered into by the charged party Arosa Knitting Corporation (the Company), and the Regional Director. Two principal issues are presented: (1) whether this court has jurisdiction under Section 10(f) of the National Labor Relations Act [1] to review such a withdrawal of a complaint in the absence of a formal order of the Board, and (2) whether the Union was entitled

---

[1]. 29 U.S.C. § 160(f) (1970).

to a hearing on its objections to the informal settlement agreement.[2] We hold that this court has jurisdiction to entertain the petition, but dismiss it on the merits.

I

In September 1971 the Union filed unfair labor practice charges against the Company with the Regional Director, alleging that the Company had violated Sections 8(a)(1) and (3) of the Act by laying off and refusing to reinstate three employees because of their Union membership or activities. The Regional Director issued a complaint based on these allegations as to two of the employees but determined that there was insufficient evidence as to the third. The General Counsel on appeal by the Union caused an amended complaint to issue to include the third employee. The hearing on the complaint, originally set for January 11, 1972, was rescheduled for January 24. On January 20, the hearing was postponed indefinitely and Board counsel informed the Union by letter of January 21 that the Company had executed an informal settlement agreement on that date. Although the Union contends that it was never requested to join in the settlement negotiations and was never informed that the Board had contacted the three employees,[3] it must have known that resolution by settlement might be forthcoming since the Company had answered both the original and the amended complaint, on December 9 and January 10, respectively, with the affirmative defense of amicable settlement with the three employees and copies of these answers had been served on the Union's

attorneys.[4] The informal "Settlement Agreement," executed on a standard Board form, was signed by the Company on January 21, 1972, and approved by the Regional Director on January 27, 1972.

The agreement recited that the Company "has made whole the employees . . . by payment [of $450] to each of them" and stipulated that the three employees "have refused and would refuse an offer of reinstatement."[5] The agreement also contained a "nonadmission clause" stating that "[b]y the execution of this Agreement the Employer does not thereby admit that it has violated any provisions of the" Act and provided for the posting of an appropriate notice in both Spanish and English. Pursuant to the standardized provisions of the agreement, the unfair labor practice complaint and the notice of hearing were withdrawn.

The January 21 letter advised the Union that the Settlement Agreement "appears to give as full a remedy as could be obtained even if the case was successfully litigated" and that "in the event you do not wish to participate in the agreement, please submit your reasons therefor within five (5) days . . . so that the Regional Director can consider your position."[6] By letter of January 24 the Union refused to execute the agreement, failed to submit its reasons for objecting and requested a hearing to place its objections on the record.[7] The Regional Director responded to the Union's letter that for his previously stated reasons "it does not appear that it would effectuate the purposes of the National

2. The Union also contends that the employees involved in this case were denied due process of the law. *See* note 28 *infra.*

3. Union Br. at 2–3.

4. Answer, December 9, 1971, J.A. at 26–27; Answer to Amendment to Complaint, January 10, 1971, J.A. 33–35. Also, in its motion for a continuance on December 9, 1971, the Company represented that "the monetary and employment aspects of [the employees'] cases have already been amicably settled." J.A. at 29.

5. Record, Exhibit 5.

6. *Id.,* Exhibit 6.

7. The letter stated, *inter alia:*
   You are hereby advised that charging party objects to this informal settlement agreement and will not execute same. Further, charging party requests a hearing before a trial examiner or a hearing officer so that our objections to the informal settlement agreement can be voiced on the record.
   J.A. at 38.

Labor Relations Act to institute further proceedings at this time." J.A. at 39.

On appeal of this ruling to the General Counsel the Union asserted two objections: (1) "an informal settlement agreement with a 'non-admission clause' . . . will not cure the extensive violations of the Act engaged in, by the [Company]," and (2) the Union was never consulted with respect to the monetary settlement with the employees. J.A. at 44–45. The Union also requested a hearing so that its "objections can be voiced on the record." On March 16 the General Counsel denied the appeal on the grounds that the agreement "adequately remedied the [charged] unfair labor practices," that the Union had been afforded an opportunity to object to the Regional Director, that it had so objected, and that this obviated the need for a hearing. It was also noted that the Union, even on appeal to the General Counsel, did not contend that the employees were entitled to more back pay than they had received in the settlement.[8]

On July 21, 1972 the Union filed the instant petition to review these actions.

## II

Our jurisdiction to entertain on direct appeal a petition to review Board action rests upon Section 10(f) of the Act, 29 U.S.C. § 160(f) (1970):

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in [an appropriate] United States court of appeals . . . .

The narrow question presented is whether the withdrawal of a complaint as part of an informal settlement agreement by the General Counsel constitutes a "final order of the Board."[9] The answer to this ultimate question depends in turn upon a resolution of two subsidiary issues: whether the General Counsel's action in this case constitutes Board action, and if so, whether this action is of the type made reviewable under Section 10(f). We conclude that such action by the General Counsel does constitute a final order of the Board reviewable by this court under Section 10(f). This conclusion is compelled by an analysis of: (1) the Board's settlement procedures as set forth in its rules and regulations, (2) the Board's argument that we lack jurisdiction, and (3) the Act and its legislative history, with particular emphasis on the effect of the 1947 Taft-Hartley amendments.

### A. Board Settlement Procedures

Amicable settlements between parties to a dispute have been called the "lifeblood of the administrative process."[10]

---

8. The General Counsel's letter to the attorneys for the Union stated:

Your appeal in the above matter has been duly considered.

The appeal is denied. Inasmuch as the undertakings in the Settlement Agreement adequately remedied the unfair labor practices alleged in the charge, further proceedings herein were deemed unwarranted. In this connection it was noted that while you complained about not being consulted with respect to the amount of back pay, you do not allege that the discriminatees are entitled to more back pay than they received.

In regard to the contention on appeal that under the principle enunciated in Leeds and Northrup Co. v. N. L. R. B., [3 Cir.] 357 F.2d 527, the Union was entitled to a hearing before a Trial Examiner on its objections to the Agreement, it was noted that pursuant to the Board's *Statement of*

*Procedure,* Section 101.9(c)(1), the Union had been afforded an opportunity, and in fact did, submit such objections to the Regional Director. Accordingly, it could not be held that the Union had been denied due process and an opportunity to be heard. See Farmers Cooperative Gin Asosciation, 168 NLRB 367, fn. 2.

J.A. at 48–49.

9. There is no question but that the Union, as charging party, has been aggrieved by the withdrawal of the complaint, that the "order" is final for review purposes, and that the relief sought has been denied in part.

10. Atty. Gen.'s Comm. on Administrative Procedure, Final Report, Sen. Doc. No. 8, 77th Cong., 1st Sess. at 35 (1941); Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. NLRB, 339 F.2d 795, 797 (2d Cir. 1964).

The Board has promulgated procedures to facilitate such settlements at all stages of unfair labor practice proceedings.[11] The method of settlement may vary. Prior to the issuance of a formal complaint, all parties are afforded an opportunity to settle disagreements consistently with the public interest; such settlements must be approved by the Regional Director and his decision may be appealed to the General Counsel.[12] The Board itself does not become involved.

Once a complaint has issued, thus triggering the formal administrative process, full settlement opportunities still exist and may be in either of two modes: formal or informal.[13] The mode chosen, so argues the Board, has a dispositive impact on a Court of Appeals' jurisdiction to review the settlement at the urging of an aggrieved party. After a complaint has issued the Board

> favors a formal settlement agreement, which is subject to the approval of the Board . . . . Ordinarily the formal settlement agreement also contains the respondent's consent to the Board's application for the entry of a decree by the appropriate circuit court of appeals enforcing the Board's order.[14]

A formal settlement agreement, then, provides for the entry of a Board order[15] clearly reviewable by a Court of Appeals.

By contrast, the informal settlement agreement proceeds by a different route:

> In some cases, however, the regional director, pursuant to his authority to withdraw the complaint before the

hearing (§ 102.18 of this chapter), may conclude that an informal settlement agreement of the type described in § 101.7 [settlement prior to complaint, described above] is appropriate. Such an agreement is not subject to approval by the Board and does not provide for a Board order. It provides for the withdrawal of the complaint.

29 C.F.R. § 101.9(b)(2) (1973). By providing for the withdrawal of the complaint without formal action by the Board, this section purports to revert the situation to that obtaining prior to the issuance of a complaint. The exercise of the Regional Director's discretion to "withdraw" the complaint,[16] based on completely undefined standards, is the fulcrum on which the Board's jurisdictional argument rests.

B. *The Board's Jurisdictional Argument*

The Board argues that the withdrawal of a complaint by the General Counsel as part of an informal settlement agreement is not subject to review by a Court of Appeals. The essential elements of that argument as propounded by the Board may be briefly stated:

> Section 10(f) of the Act provides that "[a]ny person aggrieved by a *final order* of the Board" (emphasis supplied) may petition for review in an appropriate Court of Appeals. The phrase a final order of the Board has consistently been held to refer to "an order of the Board either dismissing a complaint in whole or in part or directing a remedy for unfair labor practices found—in either case an order entered as the culmination of the

---

11. Board Statements of Procedure § 101.1 et seq., 29 C.F.R. § 101.1 et seq. (1973).

12. *Id.* § 101.7.

13. *Id.* § 101.9.

14. *Id.* § 101.9(b)(1). This section also provides:
In such an agreement, the parties agree to waive their right to hearing and agree further that the Board may issue an order

requiring the respondent to take action appropriate to the terms of the settlement.

15. *Id.* § 101.9(c)(2).

16. The withdrawal of a complaint by the regional director, or his refusal to issue a complaint in the first instance, may be appealed to the General Counsel. Board Rules and Regulations § 102.19; 29 C.F.R. § 102.-19 (1973).

procedure described in Section 10(b) and (c) of the Act." Laundry Workers Union v. N. L. R. B., 197 F.2d 701, 703 (C.A. 5, 1972).

\* \* \* \* \* \*

Action taken by the General Counsel in the exercise of his [Section] 3(d) powers cannot be viewed as action by the Board necessary to vest a court of appeals or a district court with jurisdiction under Section 10(f).[17]

The crux of this argument is that the Board itself has not formalized the action of the General Counsel by issuing an "order" as the culmination of the process embodied in Sections 10(b) and (c) and that lacking such formal action, direct review of the General Counsel's actions in a Court of Appeals must fail for lack of jurisdiction. The Board, moreover, would persuade us that the legislative history of the Act mandates acceptance of their argument and it is to that legislative history we now turn.

C.  *The Act and Its Legislative History*

Analysis of the evolution of the Act, from the original statute enacted in 1935 (49 Stat. 449) to the 1947 Taft-Hartley amendments (61 Stat. 136) makes clear that this court has jurisdiction to review the withdrawal of the complaint by the General Counsel in this case. Prior to 1947 the Board itself was charged with the duty of determining whether to issue unfair labor practice complaints and how they should be prosecuted, for there was no office of the General Counsel. Thus the Board simultaneously played the roles of prosecutor, jury and judge.[18] Under this statutory structure, it was held that the courts lacked jurisdiction to review a refusal by the Board to issue a complaint.[19] Once issued, however, the courts could review either the complaint's dismissal or the grant of remedial relief premised on the charges contained in such complaint.[20] Thus the issuance of a complaint initiated an administrative process whose end result was subject to review in the Courts of Appeals.

This statutory scheme remained unchanged until 1947 when the Taft-Hartley amendments created the office of the General Counsel. This office was created in response to heavy criticism of the unfair and uneven results obtained from the amalgamation of prosecutorial and judicial functions in the old Board.[21] The General Counsel was now to act independently of the Board, but in its name and on its behalf, in the issuance and prosecution of unfair labor practice complaints.

17. NLRB Br. at 7–8 (footnote omitted). For the relevant text of Section 3(d), 29 U.S.C. § 153(d) (1970), detailing the General Counsel's powers, *see* text at 829 *infra*.

18. Rep. Hartley commented during the debates on the Taft-Hartley amendments:
The National Labor Relations Board has been investigator, prosecutor, jury and judge all rolled into one.
1 NLRB, Legislative History of the Labor Management Relations Act of 1947 613 (1947) (hereinafter "Legislative History").
Unlike the old Board, [the new Board] will not act as prosecutor, judge and jury. Its sole function will be to decide cases.
H.R.Rep.No. 245, 80th Cong., 1st Sess. 6 (1947) ; 1 Legislative History 297.

19. General Drivers, Chauffeurs, and Helpers, Local 886, AFL v. NLRB, 179 F.2d 492, 494 (10th Cir. 1950) ; Lincourt v. NLRB, 170 F.2d 306, 307 (1st Cir. 1948) ; *see* NLRB v. Indiana & Michigan Electric Co., 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579 (1943) ;

NLRB v. National Broadcasting Co., 150 F.2d 895, 899 (2d Cir. 1945) ; NLRB v. Barrett Co., 120 F.2d 583, 586 (7th Cir. 1941).

20. For example, in Jacobsen v. NLRB, 120 F.2d 96, 100 (3d Cir. 1941), the court stated :
The Board having taken jurisdiction of the cause and having entered a final order dismissing the complaint . . . this court, pursuant to Section 10(f) . . . has jurisdiction . . . to review it.
*See* American Federation of Labor v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1939) ; Lincourt v. NLRB, 170 F.2d 306, 307 (1st Cir. 1948).

21. *See* H.R.Rep.No. 245, 80th Cong., 1st Sess. 5–6 (1947) ; 1 Legislative History 296–97 ; M. Forkosch, A Treatise on Labor Law § 302 (1965) ; International Union of Electrical, Radio and Machine Wkrs., AFL–CIO v. NLRB, 110 U.S.App.D.C. 91, 95, 289 F.2d 757, 761 (1960).

The Hartley Bill, as it originally passed the House, would have created "as an independent agency of the executive branch of the Government an office of Administrator of the National Labor Relations Act . . . to issue complaints [and] to prosecute such complaints before the Board. . . ." [22] The Administrator thus would issue complaints on his own and not on the Board's behalf.

By contrast, the Taft Bill [23] passed by the Senate would not have changed the procedure for issuing and prosecuting complaints. It would have left such authority to the Board and would not have provided for an independent "Administrator." Rather, insofar as any express provisions were concerned, the procedures of the 1935 Act were continued so that a complaint, once issued, would be disposed of by a Board order either dismissing it or remedying the proven unfair labor practices.

■■ As it emerged from the Conference Committee, Section 10(b) of the compromise version finally enacted into law as the Taft-Hartley amendments continued to and presently provides that

[w]henever it is charged that any person has engaged in or is engaging

in any such unfair labor practice, the Board . . . shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect . . . .

This power, however, was now to be exercised pursuant to Section 3(d) by

a General Counsel of the Board who . . . shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.

29 U.S.C. § 153(d) (1970). In order, then, to correct certain perceived flaws in the administration of the Wagner Act, the Congress provided for a General Counsel whose prosecutorial acts were not to be subject to Board countermand but who nonetheless was to act in the name of and on behalf of the Board.[24] Although the Congress intended the General Counsel in Section 3(d) matters to be completely independent of a Board with which it had grown dissatisfied, the conscious decision not to create an "Administrator" as a separate and inde-

---

22. H.R. 3020, § 4, 80th Cong., 1st Sess. (1947) ; 1 Legislative History 173–75.

If the Administrator concluded that a complaint should issue, he was to proceed in the manner defined under the 1935 Act:

In unfair-labor-practice cases, the Administrator will determine whether or not an alleged unfair labor practice is, indeed, such a practice under the act, and if so, he will proceed as members of the Board's field staff have proceeded in the past.

H.R.Rep.No. 245, 80th Cong., 1st Sess. 26 (1947) ; 1 Legislative History 317.

23. H.R. 3020 (as passed by the Senate), 80th Cong., 1st Sess. (1947) ; 1 Legislative History 226–91.

24. Act § 3(d), 29 U.S.C. § 153(d) (1970) ; H.Conf.Rep. on H.R. 3020, 80th Cong., 1st Sess. 37 (1947) ; 1 Legislative History 541 ; see 29 C.F.R. § 102.15 (1973). The reference in Section 10(b) to the Board's power, actually to be exercised by the General Counsel pursuant to Section 3(d), with re-

spect to the issuance and prosecution of complaints was explained as follows :

Mr. HARTLEY : The reference to the Board was necessary because, in order to have this man independent of the Board, we had to use the term "Board." Otherwise we would have had to set up a completely independent agency . . . . He acts on behalf of the Board but completely independent of the board.

Mr. MacKINNON : But while he is completely independent of the Board, he is authorized, insofar as his duties are concerned to act in the name of the Board?

Mr. HARTLEY : Yes ; in the name of the Board.

1 Legislative History 883.

The Section 10(b) powers exercised by the General Counsel in the Board's name include the power to amend the complaint prior to the issuance of an order based on such complaint. International Union of Electrical, Radio & Machine Wkrs., AFL–CIO v. NLRB, 110 U.S.App.D.C. 91, 289 F.2d 757 (1960).

pendent agency and Section 3(d)'s explicit provision "on behalf of the Board" indicates a congressional intent that the actions of the General Counsel in dealing with unfair labor practices were to constitute Board action.[25] Therefore such putative Board action reviewable under Section 10(f) is not made unreviewable because taken by the General Counsel.

We conclude, then, that the jurisdiction of the Courts of Appeals under the 1935 Act continued unchanged by the 1947 amendments. Although the Courts of Appeals generally are without jurisdiction to review a refusal to issue a complaint,[26] they clearly may review a "formal" settlement agreement approved by the Board. There is, moreover, substantial similarity between a "formal" and an "informal" settlement. Each finally ends an unfair labor practice proceeding by "granting or denying in whole or in part the relief sought," the former by a Board "order" and the latter by action of the General Counsel "on behalf of the Board."

We must look rather to the language of the statute, read in the light of its purpose and its legislative history, to ascertain whether the "order" for which the review in court is provided, is contrasted with forms of administrative action differently described as a purposeful means of excluding them from the review provisions.

American Federation of Labor v. NLRB, 308 U.S. 401, 408, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940). The substantive elements of the formal and the informal settlement are essentially identical[27] and we discern no intent by the Congress to

25. Considering the magnitude of the changes wrought by the 1947 amendments, one justifiably would expect to find some evidence in the legislative history indicating an intent by the Congress to restrict the jurisdiction of the courts, if that indeed were the case. Although there are allusions in the legislative history to the fact that the General Counsel would be a "labor czar" with vast and unreviewable authority, the precise implication of Section 3(d) goes to the decision to issue a complaint in the first instance and to review by the Board:

> The General Counsel . . . is to have the final authority to act in the name of, but independently of any direction, control, or review by, *the Board* in respect of the investigation of charges and the issuance of complaints of unfair labor practices, and in respect of the prosecution of such complaints before the Board.

H.R.Conf.Rep.No.510, on H.R. 3020, 80th Cong., 1st Sess. 37 (1947) U.S.Code Cong. Serv. 1947, p. 1142; 1 Legislative History 541 (emphasis added). Indeed, the broadening of the scope of review powers of the Courts of Appeals by the 1947 amendments suggests an even greater reliance on judicial review of unfair labor practice proceedings. *See id.* at 56–57, 1 Legislative History 560–61.

26. Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); General Drivers, Chauffeurs, and Helpers, Local 886, AFL v. NLRB, 179 F.2d 492, 494–495 (10th Cir. 1950); Lincourt v. NLRB, 170 F.2d 306, 307 (1st Cir. 1948). Compare, however, NLRB v. International Brotherhood of

Electrical Wkrs., Local Union 357, 445 F.2d 1015, 1016 n. 2 (9th Cir. 1971):

> But it may be that where the decision of the general counsel not to issue an unfair labor practices complaint is wholly without basis in law, a federal district court may mandate issuance of the complaint. Cf. Retail Store Employees Union, etc. v. Rothman, 112 U.S.App.D.C. 2, 298 F.2d 330 (1962).

In *Rothman* and in Hourihan v. NLRB, 91 U.S.App.D.C. 316, 201 F.2d 187 (1952), cert. denied, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953), we expressly pretermitted the issue of the district court's power in this regard and we do the same today.

27. It is arguable, of course, that the power of the General Counsel to choose the mode of settlement without minimal standards in either the Act or the Board's regulations and concomitantly delineate the jurisdictional parameters of the Courts of Appeals itself would be intrinsically arbitrary, except that it may be saved by the power of the courts to review both the choice and the ensuing result in order to guard against arbitrary and capricious action. The Third Circuit accepted the argument in Leeds & Northrup Co. v. NLRB, 357 F.2d 527, 531 (3d Cir. 1966), that it is

> anomalous in that mere choice of the procedural form in these matters can foreclose judicial review, and this despite the absence of minimal standards in the *Act* and in the Board's own rules and regulations for determining the choice of procedure.

exclude post-complaint, informal settlement agreements entered into by the General Counsel "on behalf of the Board" from the review provisions of Section 10(f).

Before leaving the jurisdictional issue, however, we again emphasize the narrow contours of our holding. Section 3(d) invests the General Counsel with broad and "final authority" over the prosecutorial aspects of the Board's administrative process. Yet it is readily apparent that the prosecutorial role may at times blend with the adjudicatory role. Also, even in its most elemental form—for example, the unreviewable decision whether to issue a complaint—the prosecutorial act often might, quite properly, encompass basic policy considerations. Thus, after a complaint has issued and the administrative process initiated, certain actions which broadly conceived might be characterized as "prosecutorial" assume essentially adjudicatory attributes. Such is the case where the General Counsel, acting for the Board, withdraws a complaint on the basis of an informal settlement agreement which provides for an adjustment of the conflicting interests of the private parties and thus partially or wholly remedies the underlying labor dispute. This action cannot meaningfully be distinguished from other types of Board action traditionally held to be within the review provisions of Section 10(f).

### III

■■■ Turning to the merits, the principal issue [28] is whether the General Counsel could accept the settlement agreement and conclude the unfair labor practice proceeding without a hearing over the objections of the Union. We think the General Counsel clearly acted within the broad range of discretion accorded him under the law of this circuit. Although the circuits have taken divergent courses on the right of a charging party to a hearing on his objections to a settlement agreement,[29] the law in this circuit was settled in Textile Workers Union of America, AFL–CIO v. NLRB, 111 U.S.App.D.C. 109, 294 F.2d 738 (1961). In *Textile Workers* we considered the right to such a hearing in the context of an order of the Board approving a formal settlement agreement, but

---

The court also stated in *Leeds* that

> [t]he distinction of formal or informal final disposition under the facts of this case confuses incidence with substance. The absence of a formal order of the Board, which respondent insists is a fatal jurisdictional defect here, does not preclude review by this Court of a final disposition by an administrative agency.

*Id.*

The Third Circuit appears to be the only circuit to have explicitly passed upon the precise jurisdictional issue in this case, when it held in *Leeds* that the Courts of Appeals have jurisdiction to review the withdrawal of a complaint by the General Counsel as part of an informal settlement agreement. Although we agree with the result in *Leeds* as to jurisdiction and share many of the concerns discussed by that court, we find it unnecessary to rely, as did the court in *Leeds*, on the Administrative Procedure Act, 5 U. S.C. § 551 et seq. (1970), in aid of our jurisdiction. The Third Circuit reaffirmed its reasoning in *Leeds* in Terminal Freight Co-operative Ass'n v. NLRB, 447 F.2d 1099, 1101 (3d Cir. 1971), cert. denied, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972),

but held that it lacked jurisdiction to review the informal settlement agreement involved in that case because a complaint had never been issued by the Regional Director in the first instance.

28. The argument is also urged upon us that counsel for the Union represented the three employees as their attorney in the proceedings and the failure of the Board or its agents to include counsel in the settlement negotiations violated the employees' due process rights. At oral argument, however, counsel stated that he represented the employees for some purposes but not for others; he could not state whether he in fact represents them on this appeal which attempts to overturn a settlement agreement which appears to satisfy the employees' interests. The Union's standing to raise this issue in these circumstances is dubious at best, and we dispose of this issue as lacking in merit without further discussion pursuant to local rule 13.

29. The various approaches taken by the circuits on this issue are detailed in Concrete Materials of Georgia, Inc. v. NLRB, 440 F. 2d 61 (5th Cir. 1971).

the guidelines set forth there are equally applicable in the informal settlement context. Although the charging party may not veto a settlement agreement found to be in the public interest,[30] we stated that we were

> unwilling to lay down a general rule that in no circumstances, though the Board has issued a complaint, is the charging party to be heard on the question of acceptance by the Board of a settlement stipulated between the Board's General Counsel and a respondent employer. Regard must be had to the particular circumstances bearing upon whether or not there would be an abuse of discretion in entering a consent order without a hearing notwithstanding detailed and substantial objections and request for a hearing thereon.

*Id.* at 112, 294 F.2d at 741. Although the case was "rather unusual and complicated" and the charging party had presented detailed and substantial objections, the Board tersely denied "the objections and request for a hearing . . . as lacking in merit." *Id.* at 111, 294 F.2d at 740.

We held, therefore, in view of the union's detailed and substantial objections, that the Board order approving the settlement agreement could not stand

> without either (1) a reasonable opportunity for the Union to be heard on its objections or (2) a presentation on the record of reasons for acceptance

of the stipulation as the basis for the order notwithstanding the Union's objections . . . .

*Id.* at 112, 294 F.2d at 741. After remand we reviewed the Board's supplemental decision in which it explained on the record the reasons for approving the agreement over the union's objections. Alluding to "the broad discretion the Board may exercise in the settlement of unfair labor practice cases," we granted enforcement. Textile Workers Union of America, AFL–CIO v. NLRB, 114 U.S. App.D.C. 295, 296, 315 F.2d 41, 42 (1963).

Taken together, the *Textile Workers* cases teach the following: if the Board is properly to exercise its discretion to settle a case without a hearing over substantial objections of the charging party, it must state reasons adequate to satisfy a reviewing court. That standard is clearly satisfied in this case. First, the Union was given an opportunity to state its objections before both the Regional Director and the General Counsel and it did so.[31] Second, the objections raised by the Union, which do not assert any disputed issues of material facts, pale by comparison to those raised in *Textile Workers*.[32] The Union did not contend that the monetary settlement was insufficient in any sense, but objected only to the non-admission clause and to the fact that it was not consulted in advance of the settlement. Finally, the General Counsel, in contrast to the

---

30. Textile Workers "assumed" this to be the case, and the enforcement of the order of the Board after remand raised the assumption to a holding. Textile Wkrs. Union of America, AFL–CIO v. NLRB, 114 U.S.App. D.C. 295, 315 F.2d 41 (1963); Concrete Materials of Georgia, Inc. v. NLRB, 440 F. 2d 61 (5th Cir. 1971); Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. NLRB, 339 F.2d 795 (2d Cir. 1964).

31. We note also that the Union never explained the nature of its objections to the Regional Director but only stated that it "objects." *See* note 7 *supra.* On appeal to the General Counsel it finally specified the precise nature of its objections. *See* text at 825 – 826, *supra.*

32. As the court noted in *Textile Workers:* Detailed objections were filed claiming, inter alia, that the back pay provision was greatly inadequate in that the computation of the amount was based on improper dates, that the proposal to offer to employees jobs in a new location is such that it cannot practically be accepted, that certain limitations impressed on the terms of the order, e. g., that the offer of employment at the new location be accepted within five days, are unfair in the circumstances, and that the relief in various other respects works an undue hardship upon the employees.

111 U.S.App.D.C. at 112, 294 F.2d at 741.

initial, conclusory statement in *Textile Workers*, here provided full and adequate reasons for accepting the settlement agreement without a hearing.[33] We think that the failure of the Regional Director to notify the Union in advance of his approval of the settlement is not arbitrary or capricious per se in view of the Union's opportunity to raise, and have considered, its objections to the agreement. In these circumstances it was a proper exercise of discretion to accept the settlement agreement without a hearing.

Accordingly, the petition for review will be dismissed on the merits.

It is so ordered.