**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 357, Respondent.**

**Harold B. PARISH et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 24645, 24793.

United States Court of Appeals, Ninth Circuit.

June 24, 1971.

Leonard I. Gang (argued), of Dickerson, Miles & Gang, Las Vegas, Nev., for Harold B. Parish and others.

Herman Levy (argued), Michael F. Rosenblum, Attys., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Deputy Asst. Gen. Counsel, NLRB, Washington, D. C., Abraham Siegel, Director, NLRB, Los Angeles, Cal., for National Labor Relations Bd.

Barry S. Jellison (argued), Intl. Brotherhood of Elec. Workers, Local 357, Las Vegas, Nev., Philip Paul Bowe, of Davis, Cowell & Bowe, San Francisco, Cal., Kevin M. Efroymson, Las Vegas, Nev., for Intl. Brotherhood of Electrical Workers, Local 357.

Before CHAMBERS, BARNES and CHOY, Circuit Judges.

CHAMBERS, Circuit Judge:

The labor board and the Local 357 arrived at a settlement on an unfair labor practices complaint issued by the board in response to charges filed by Parish, Handley, Woody and Gregory. The four charging parties were "travelers," electricians who were members of the IBEW locals not at the Nevada AEC test site where Local 357 was in charge.

Much of the relief requested by the charging parties was granted in the settlement. But the charging parties filed objections to the settlement with the regional director and later with the board.

The charging parties wanted a hearing before the board on the settlement and the fairness thereof. This they were denied, and an order, enforcement and review of which is sought here, was entered on the settlement.

Our views on the necessity of such a hearing are in accord with those set down by the Fifth Circuit in Concrete Materials of Georgia, Inc., v. NLRB (5th Cir. 1971), 440 F.2d 61: "The charging party must be afforded (1) an evidentiary hearing on any material issues of disputed fact presented by his objections, * * * and (2) a presentation on the record of reasons for acceptance of the settlement agreement as the basis for the order notwithstanding his objection." [1]

■■ The general counsel refused to include in the complaint the charge that Local 357 denied membership rights to the travelers. The charging parties are not entitled to an evidentiary hearing on their objection to this refusal because, as the board noted on the record, the objection is to a matter outside the scope of the complaint. The membership denial charge was dismissed by the regional director, and the appeal of the dismissal was denied by the general counsel. The decision of the general counsel not to issue an unfair labor practice complaint is not reviewable.[2] Vaca v. Sipes (1967), 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842. This objection presents no material issue of disputed fact.

---

1. The circuits appear not to be in agreement on this question. In the second circuit the charging party is not entitled to an evidentiary hearing on its objections to a post-complaint settlement agreement (Local 282, International Brotherhood of Teamsters, etc. v. NLRB (2nd Cir. 1964), 339 F.2d 795). The third circuit requires an evidentiary hearing on charging party objections to a post-complaint settlement agreement (Leeds & Northrup Co. v. NLRB (3rd Cir. 1965), 357 F.2d 527; Marine Engineers' Ben. Ass'n v. NLRB (3rd Cir. 1953), 202 F.2d 546. And in the D.C. circuit, "regard must be had to the particular circumstances."

Textile Workers Union of America v. NLRB (1961), 111 U.S.App.D.C. 109, 294 F.2d 738. Textile Workers required on remand either a hearing or a presentation on the record of the board's reasons for acceptance of the agreement over the charging party's objections.

2. But it may be that where the decision of the general counsel not to issue an unfair labor practices complaint is wholly without basis in law, a federal district court may mandate issuance of the complaint. Cf. Retail Store Employees Union, etc. v. Rothman (1962), 112 U.S.App.D.C. 2, 298 F.2d 330.

■ Nor does the objection to inclusion in the agreement of a clause denying that signing the agreement constitutes an admission by Local 357 that it violated the National Labor Relations Act present a material issue of disputed fact. The board informed the charging parties that it considered the nonadmission clause surplusage since the agreement provided for entry of a consent decree by any appropriate court of appeals and a waiver of all defenses thereto.

Following a strike in 1966 a large number of travelers resigned from one of the employers at the test site. It was charged that the resignations were coerced by the union as a part of a pattern of discriminatory work referrals practiced against the travelers in favor of Local 357 members. Local 357 was ordered to make whole those travelers injured by the discrimination by granting them back pay. Now the charging parties object to the method used by the regional director to discover which travelers suffered the discrimination.

As noted in the board's response to this objection, the method used by the regional director was to send letters to travelers who might have been discriminated against, explaining the charges filed against Local 357 and requesting them to fill out and return a questionnaire informing the regional director of any discrimination they might have suffered. The charging parties were invited to assist by correcting or supplementing the list of travelers to whom the letters were sent. Eight travelers claimed back pay, and six were granted it.

■ The charging parties contend that instead the burden should have been placed on Local 357 to prove that the resignations were voluntary, so that all those who resigned during the period in question would be entitled to back pay unless the local could prove otherwise. They claim that because of fear of future union reprisals the travelers who resigned under coercion are not likely to take affirmative action to obtain back pay. Although placing the burden on the local might increase the probability that those who suffered discrimination are made whole, we cannot say that the survey method selected by the regional director was outside his discretion. The charging parties do not contend that there are travelers who qualified under the regional director's method who have not been granted back pay, but only that the regional director's method of discovery was faulty. Nor is there any allegation that all who suffered discrimination were not reached by the regional director's survey.

■ Local 357 charged the travelers excessive fees as a condition of employment or referral. The settlement agreement required the local to reimburse all travelers for excessive fees collected between November 7, 1966, and June 1, 1967, at the rate of 23% of the total amount collected during the relevant period in 1966, and at 13% of the total amount collected in the relevant period in 1967, with six percent interest.

The charging parties object to the June 1, 1967, cut-off date, alleging that excessive fees are still being charged. There are no facts in the record that support this cut-off date as the date on which the local stopped charging excessive fees. The board merely notes that "the period of time for which reimbursement was ordered corresponds with the period of Union interference and discrimination which the Regional Director felt would justify treating the fees as conditions of referral or employment."

In calculating the percentages of the fees to be repaid to the travelers, the regional director first determined their fair share of the "total hiring hall expense." By subtracting their fair share from the amount originally assessed, the regional director derived the percentages of the original assessment to which the travelers were entitled as reimbursement. This method has support in the case law (J. J. Hagerty, Inc. (1965), 153 NLRB 1374, enforced sub nom. NLRB v. Local 138, IUOE (2d Cir. 1967), (385 F.2d 874), but the board presented no facts to show just what it considered a hiring hall expense that

would benefit travelers and Local 357 members alike. The charging parties contend that included in the "hiring hall expense" were items of benefit only to members. We simply do not know what expertise the regional director used.

We think a hearing was required on the cut-off date chosen for repayment of excessive fees charged and the percentages to be repaid. On the other points, we think no hearing was required.

Remanded for proceedings in accord with this opinion.