476 F.2d 1031
 82 L.R.R.M. (BNA) 3159, 71 Lab.Cas. P 13,600
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION,
AFL-CIO, Respondent.
CATALYTIC INDUSTRIAL MAINTENANCE COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 72-1347, 72-1379.
 United States Court of Appeals,
First Circuit.
 April 17, 1973.
 
 Alan H. Randall, Hato Rey, P. R., with whom Edward M. Borges and O'Neill & Borges, Hato Rey, P. R., were on brief, for petitioner.
 Lawrence D. Levien, Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, Patrick Hardin, Marcel Mallet-Prevost, Asst. Gen. Counsels, and Elliott Moore, Deputy Asst. Gen. Counsel, Washington, D. C., were on brief, for respondent.
 Ginoris Vizcarra De Lopez-Lay, San Juan, P. R., with whom Lopez-Lay & Vizcarra, San Juan, P. R., was on brief, for intervenor, Oil, Chemical and Atomic Workers International Union, AFL-CIO.
 Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 These proceedings involve an application for enforcement and petition for review of an order of the National Labor Relations Board (the Board) issued pursuant to a settlement agreement between the General Counsel and the Oil, Chemical and Atomic Workers International Union, AFL-CIO (the Union) entered into after an unfair labor practice complaint issued pursuant to the charges filed by the Catalytic Industrial Maintenance Company (the Company). The principal issue raised by the Company's challenge to the consent order concerns the conditions under which a charging party, dissatisfied with a consent order issued by the Board against a charged party, is entitled to an administrative hearing on its objections.
 
 
 2
 On March 17, 20, and April 3, 1972, the Company filed charges with the Regional Director alleging that since March 15, the Union had engaged in conduct violative of Sections 8 (b) (1) (A) and 8(b) (4) (i) and (ii) (B). Specifically, one charge alleged that in the course of an organizational strike against the Company at the Puerto Rico Olefins job site, the Union coerced and restrained employees in the exercise of their rights under section 7 of the Act by blocking ingress and egress from the premises, threatening violence against those who entered the premises, and by mass picketing. The other charges were that by these and other means the Union prevented employees of other companies from working at the Olefins and later the so-called PPG Industries job site.
 
 
 3
 Subsequently, after a complaint issued, the Union and the General Counsel entered into a proposed consent settlement. The Company objected to the non-admission of proscribed conduct clause, claiming that this would prevent the Board from using the settlement as either a basis for court contempt proceedings or a broad Board order in the event of future violations. It also objected to the absence of the admittedly unusual remedy of back pay to employees who had been prevented from working during the strike. Pursuant to Sec. 101.9(c) of the Board's Rules, 29 C.F. R. Sec. 101.9(c), the Regional Director and the General Counsel each in turn wrote letters to the Company explaining their reasons for rejecting the Company's objections. After receiving a further statement of these objections, the Board finally approved the settlement.
 
 
 4
 After the Board applied to us for enforcement of its order, # 72-1347, the Company filed a motion to intervene, which the Board opposed. Because of our doubts as to the availability of intervention to a charging party opposing parts of a consent judgment in light of UAW, Local 283 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), we suggested that the Company file a petition for review of the Board's order which it did shortly thereafter, # 72-1379. The Union subsequently submitted an unopposed motion to intervene in the latter case to defend the consent order.
 
 
 5
 We now deny the Company's motion to intervene in the Board's application for enforcement and grant the Union's motion to intervene in the Company's petition for review. We find Scofield controlling, although it does not deal explicitly with this problem. There the Supreme Court held that a successful charging or successful charged party could intervene in the subsequent application for enforcement or petition for review. The Court found in each instance several policy reasons for permitting intervention. One underlying concern was that denying intervention to the winner would create the anomaly that the right to participation in subsequent court proceedings would hinge on the nature of the decision of the Board, the loser having an absolute statutory right to petition for review under Sec. 10(f), 29 U.S.C. Sec. 160(f), but the winner being made to "suffer by his own success". See 382 U.S. at 210, 216, 222, 86 S.Ct. 373. The Court's ruling there created a simple and clear procedural rule: the party supporting a Board order, or the part challenged, may intervene, while the party opposing a Board order or a portion of it may petition for review. We see no reason why this rule which applies when the Board issues an order after full adjudication should not apply when it does so based on a settlement agreement.[1] Since the Union is supporting the Board's order insofar as it rejected the Company's objections, it may intervene; since the Company is attacking the Board's order, it may come into court only on its petition for review.
 
 
 6
 This leads us to the Company's principal contention-that the charging party in an unfair labor practice proceeding has a right to a hearing before the Board on its objections to a proposed settlement between the Board and the charged party. We reject that claim here both because the charging party did not present this claim to the Board[2] and, assuming in light of the Board's stance in this court that such a presentation would have been unavailing and that we can consider the claim,[3] because we find that the right to a hearing is not absolute and the necessary pre-conditions do not exist in this case.
 
 
 7
 Initially, we agree with the Second Circuit, Local 282, International Brotherhood of Teamsters v. N.L.R.B., 339 F.2d 795 (2d Cir. 1964), that section 5(b) of the Administrative Procedure Act, 5 U.S.C. Sec. 554(c), does not guarantee the charging party a hearing on its objections to a settlement. We note first that were Sec. 554(c) applicable it would not merely provide a right to a hearing on objections to a settlement, as the Third Circuit indicated, Marine Engineers Beneficial Ass'n No. 13 v. N.L. R.B., 202 F.2d 546 (3d Cir.), cert. denied, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953), but would permit obstruction of the settlement itself and a right to a hearing on the merits of the complaint. If a charging party were held to be an "interested party" under that subsection, it could decide whether to "determine [the] controversy by consent" or insist on a "hearing and decision on notice".[4] It would then have "a complete veto on the public interest in compromise", 339 F.2d at 801, a power wholly out of step with the unique and carefully structured role of a charging party in labor cases, see discussion infra. Moreover, the language of the APA does not compel such a holding. The term "interested parties" is not as broad as the term "person aggrieved" to whom rights to petition for court review are granted by the Labor Act or the term "persons entitled to notice of an agency hearing" used in the preceding subsection (b) of 5 U.S.C. Sec. 554. "In this context, 'interest' means a legally recognized private interest and not simply a possible pecuniary benefit resulting from an agency's enforcement of a public right." 339 F.2d at 800. As the court there notes, a person can make such a showing "only if the statute can fairly be construed as vesting him with a new private right." Id. Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738 (1940), established that the ban on unfair labor practices was created to enforce the public's interest in peaceful and fair settlement of labor disputes and not to enhance the property rights of the labor disputants. Finally, the legislative history of the APA indicates that Congress did not intend more than to insure the availability of informal means of settlement; it did not address the question of who was entitled to demand a hearing. 339 F.2d at 801. Since 5 U. S.C. Sec. 554(c) is not applicable, it neither permits the charging party to obstruct a settlement nor bestows any rights to a hearing on objections to a settlement.
 
 
 8
 Turning to the Labor Act, we note that courts of appeals have reacted variously to a charging party's claim to a hearing on its objections. At one end of the spectrum, the Third Circuit, in Marine Engineers, supra, held that a charging party is always entitled to a hearing on its objections to a settlement once a complaint has issued. This view was reaffirmed in Leeds & Northrup Co. v. N. L.R.B., 357 F.2d 527 (3d Cir. 1966), on which the petitioner heavily relies, and in Terminal Freight Cooperative Ass'n v. N.L.R.B., 447 F.2d 1099 (3d Cir. 1971), cert. denied, 409 U.S. 1063, 93 S. Ct. 553, 34 L.Ed.2d 516 (1972), in which the court refused to extend its holding to cases in which a complaint has not issued. In International Union, United Automobile, Aircraft, and Agricultural Implement Workers of America v. N.L. R.B., 231 F.2d 237 (7th Cir.), cert. denied, 352 U.S. 908, 77 S.Ct. 146, 1 L.Ed. 2d 117 (1956), the Seventh Circuit adopted the position enunciated in Marine Engineers. At the other extreme, the Second Circuit held in Local 282, Teamsters, supra, that the charging party has no rights at all to a hearing on its objections.
 
 
 9
 The remaining circuits have taken intermediate positions. In Textile Workers Union of America v. N.L.R.B., 111 U.S.App.D.C. 109, 294 F.2d 738 (1961), the District of Columbia Circuit refused to lay down a general rule, insisting rather that:
 
 
 10
 "Regard must be had to the particular circumstances bearing upon whether or not there would be an abuse of discretion in entering a consent order without a hearing notwithstanding detailed and substantial objections and request for a hearing thereon." 294 F.2d at 741.
 
 
 11
 Under the circumstances of that case, the court held that the order could not stand without "either (1) a reasonable opportunity for the Union to be heard on its objections or (2) a presentation on the record of reasons for acceptance of the stipulation . . . notwithstanding the Union's objections." Id. [Emphasis added.] After an extensive survey of the problem, the Fifth Circuit held that a charging party:
 
 
 12
 "must be afforded (1) an evidentiary hearing on any material issues of disputed fact presented by [the] objections . . . and (2) a presentation on the record of reasons for acceptance of the settlement agreement . . . notwithstanding [the] objection." Concrete Materials of Georgia, Inc. v. N.L.R.B., 440 F.2d 61, 68 (5th Cir. 1971). [Emphasis added.]
 
 
 13
 This position was reaffirmed in Poloron Products of Mississippi, Inc. v. N.L.R.B., 450 F.2d 793 (5th Cir. 1971), and expressly followed by the Ninth Circuit in N.L.R.B. v. International Brotherhood of Electrical Workers, Local 357, 445 F.2d 1015 (9th Cir. 1971).
 
 
 14
 The Company has asked us to follow the Third and Seventh Circuits but argues that even under the more moderate approaches of the Fifth, Ninth, and District of Columbia Circuits, it is entitled to a hearing. The Board asks us to adopt the Concrete Materials standard adopted by the Fifth and Ninth Circuits. Essentially for the reasons stated in that opinion, we adopt the Concrete Materials standard and find that under it, this charging party is not entitled to a hearing.
 
 
 15
 As the other courts have noted, the charging party in an unfair labor practice proceeding possesses a unique legal status. Although like a complaining witness in a criminal prosecution in that it cannot compel issuance of a complaint, it has far greater powers once the complaint issues. By Board rule, 29 C.F.R. Sec. 102.8, pursuant to statutory authorization, 29 U.S.C. Sec. 160(b), it is considered a "party", and may, subject to limitations imposed to parallel the extent of its interest, participate fully in the subsequent hearing and proceedings before the Board, by introducing and objecting to evidence, cross-examining witnesses, filing exceptions, arguing orally before the Board, and petitioning for reconsideration. If its position is unsuccessful before the Board, it may petition the appropriate court for review, as "a person aggrieved" under Sec. 10(f), 29 U.S.C. Sec. 160(f). Finally, if successful before the Board, it may intervene in the court proceeding brought by the Board to enforce its order. See Scofield and discussion, supra. On the other hand, the charging party is not the alter ego of the Board or the equivalent of a civil litigant. It may not overrule a decision not to issue a complaint. See Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967). Its consent is not necessary for a stipulated settlement. It may not move a court to enforce a Board order or to find a party in contempt of an order already enforced. Amalgamated Utility Workers, supra. It is rather the gadfly insuring that the Board considers all relevant facts and acts in the public interest and the enforcer of whatever private rights the Act recognizes. Scofield, supra, 382 U.S. at 218-221, 86 S.Ct. 373.
 
 
 16
 This dual role suggests the scope of a charging party's participation in a settlement proceeding. That it may file and press objections, 29 C.F.R. Sec. 101.9(c), even by court petition, is a reflection of its role both in keeping the Board within the statute and the public interest and in presenting its private interest in the dispute. That it may not obstruct the settlement by its disapproval is a corollary of the Board's ultimate and exclusive power to enforce the unfair labor practice provisions of the Act. Amalgamated Utility Worker, supra. Similarly, we believe that its right to obtain a hearing is limited to those instances in which it alleges facts which are both disputed and material to the Board's decision; to give a broader opportunity would be to render private rights predominant and obstruct expeditious Board dispositions without concomitant benefit to its decision-making process. In addition, since court review is available, it must be made meaningful. It cannot be without a statement by the administrative agency of its reasons for rejecting the challenge. Only then can the charging party, the public and the court be sure that the Board in fact gave consideration to the objections raised and only then can the court intelligently review the decision, to insure its compliance with law and the scope of agency discretion. Textile Workers, supra, 294 F.2d at 741. Accordingly, we hold, with the Fifth and Ninth Circuits, that after the filing of an unfair labor practice complaint and presentation of a settlement agreement, the charging party must be afforded: (1) an evidentiary hearing on any material issues of disputed fact presented by its objections; and (2) a presentation on the record of reasons for acceptance of the settlement agreement notwithstanding the objections.
 
 
 17
 The Company here raises no material issue of disputed fact. It objects to the non-admission clause first on the grounds that it renders the resulting consent order an insufficient basis for a court contempt citation should the Union subsequently violate the consent order and hence the court judgment enforcing it. We note initially that the sufficiency of the consent order for contempt purposes is a matter of law, probably resolved in the Board's favor by Swift & Co. v. United States, 276 U.S. 311, 48 S. Ct. 311, 72 L.Ed. 587 (1928), and N.L. R.B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). Moreover, insofar as courts might hesitate to use their power to cite for contempt when the underlying conduct is not admitted, a proposition for which the Company cites N.L.R.B. v. International Hod Carriers Union, 228 F.2d 589 (2d Cir. 1955), the decision whether to accept the non-admission clause and risk court reluctance to find contempt rather than adjudicate the issue of guilt is a matter for the Board's administrative discretion, which we cannot say was here abused.
 
 
 18
 The Company also objected to the non-admission clause because it would be an insufficient basis for a subsequent broad order against the Union -prohibiting it from engaging in similar conduct at any location-if it repeated the illegality in the future. When this objection was rejected by the General Counsel in part because there was no evidence of Union "proclivity" to violence, stated to be the applicable standard, the Company claimed, both before the Board and here, that the record was sufficient justification for a broad order now. Given the Company's concession that there are no other prior proven instances of this Union's violence, we think the Board was justified in not finding "proclivity" and thus not seeking a broad order in the settlement. The Regional Director admitted that a Board order issued by consent is not considered by the Board in a subsequent proceeding with regard to whether a broad order should then issue. But again, as he noted in his letter to the Company, the decision whether to accept the non-admission clause in a consent settlement, which as here fully remedies all of the violations listed in the charges filed by the Company and the complaint, or to expend the time and money required to litigate the issue of culpability before the Board and court so that the order could be used in the future to remedy broadly repeated violations is a matter for the Board's sound discretion, which we again cannot say was improperly exercised here.
 
 
 19
 Lastly, the Company seeks the unusual remedy of back-payments by the Union to the employees prevented from working because of the Union's conduct. Again, the appropriate remedy is a matter for administrative judgment. Butz v. Glover Livestock Commission Co., Inc., 411 U.S. 182, 93 S.Ct. 1455, 36 L. Ed.2d 142 (1973). The Board has a long-standing policy against such awards in this type of case, Colonial Hardwood Flooring Co. Inc., 84 N.L.R.B. 563 (1949), grounded in sound policy, Long Construction Co., 145 N.L.R.B. 554 (1963), which it has recently reaffirmed, over dissent, in the face of contrary recommendations by the General Counsel and the Administrative Law Judge. Union de Tronquista de Puerto Rico, Local 901 (Lock Joint Pipe & Co. of Puerto Rico, 24-CB-774, 775 (N.L.R. B. Mar. 15, 1973). We can see no error in enforcing what was then and still is existing Board policy. Nor can we say that that policy, or its application in this case, is "unwarranted in law" or "without justification in fact" Glover Livestock, supra, 411 U.S. 186, 93 S.Ct. 1455.
 
 
 20
 In addition, we find that the Company has received the statement of reasons for acceptance of the settlement and rejection of its objections to which it is entitled. Both the Regional Director and General Counsel wrote letters, the first quite extensive, answering specifically each of the objections raised, generally with the explanations given above. Finally, the Board, in an extensive footnote to its decision and order, described the Company's objections and the General Counsel's responses and, after careful review of the record and the recommendations of the Regional Director and General Counsel, stated its approval of the stipulation and dismissal of the objections as lacking in merit. Both the Board and its agents have fully and carefully presented their decision and the factors weighed in reaching it; this is all that is necessary for intelligent and fair review.
 
 
 21
 We find no merit in the Company's other contentions.
 
 
 22
 In # 72-1347, the Company's motion to intervene is denied and the order is enforced. In # 72-1379 the Union's motion to intervene is granted and the petition is denied. Costs to the Board in both cases and to the Union in # 72-1379.
 
 
 
 [1]
 In Scofield, the Board argued to the Supreme Court that a decision there permitting court intervention by the successful charging party in the Board's application for enforcement would make it possible for the charging party to thwart settlements while the case was pending before the Court of Appeals. The Court refused to consider that argument, 382 U.S. at 222, 86 S.Ct. 373 n. 19, finding nothing in the record to support the claim. That argument is of course not applicable here-the whole purpose of the Company's participation in these court proceedings is to thwart a settlement arrived at during agency consideration, a role the Board does not claim is improper
 
 
 [2]
 In neither its letter of June 6 to the Regional Director nor its letter of August 8 to the Board did petitioner request or argue its right to a hearing. The first letter closed with a statement of petitioner's correct understanding of the procedure under Sec. 101.9(c), which does not mention hearings. The second letter closed with the sentence: "If the Board desires further detailed argument, I will submit it upon request." [Emphasis added.] The Board could hardly be expected to construe this as a request for an evidentiary hearing as of right
 
 
 [3]
 We note that it is the Union and not the Board which objects here on the grounds that the Company failed to raise this issue before the Board
 
 
 [4]
 Section 554(c) provides in full:
 "(c) The agency shall give all interested parties opportunity for-(1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and (2) to the extent that the parties are unable so to determine a controversy by consent, hearing and decision on notice and in accordance with sections 556 and 557 of this title."