**OSHKOSH TRUCK CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1402.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1975.

Decided Feb. 24, 1976.

Willis S. Ryza, Chicago, Ill., Joseph A. Melli, Madison, Wis., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Robert A. Giannasi, Marion L. Griffin, Attys., N.L.R.B., Washington, D. C., John A. Fillion, Detroit, Mich., George F. Graf, Milwaukee, Wis., for respondent.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and WHELAN, District Judge *.

HASTINGS, Senior Circuit Judge.

This case is before us on a petition for review of an order of the National Labor Relations Board (the Board) denying leave to Oshkosh Truck Corporation (the Employer) to appeal from an approval by an Administrative Law Judge of an informal settlement agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and its Local 578, UAW (the Union).

The Employer, a Wisconsin corporation, maintains its principal office and plants at Oshkosh, Wisconsin, where it is engaged in the manufacture and sale of trucks. Since approximately 1937 the Union had represented the Employer's employees in a unit consisting of all production and maintenance employees, excluding office employees, firemen and superintendents. The Union had entered into a series of collective bargaining

* United States District Judge Francis C. Whelan of the Central District of California is sitting by designation.

agreements with the Employer. On May 31, 1974, the most recent agreement between the parties expired without agreement on a new labor contract having been reached. On or about June 1, 1974, the employees in this unit ceased work and went on strike. The strike continued until at least through November 14, 1974.

In the summer of 1974, the Union and the Employer each filed unfair labor practice charges against the other based on conduct during the contract negotiations and subsequent strike. The Regional Director, after investigation of the charges, issued separate complaints against the Employer and the Union.

The complaint against the Employer charged it with bargaining in bad faith, with threatening picketing employees with bodily harm and with threatening striking and nonstriking employees with various forms of economic reprisals, all in violation of Sections 8(a)(1), (3) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 151–68 (1973) (the Act).[1]

The complaint against the Union, as amended, charged it with 160 acts of strike misconduct ranging from the use of abusive language to threats and acts of violence, all in violation of Section 8(b)(1)(A) of the Act.[2] After the complaint against the Union issued, the Board's Regional Director sought federal injunctive relief against the Union to prevent further acts of violence and misconduct pending resolution of Board proceedings on the complaint. The request for injunctive relief was eventually denied.

In the meantime, the Regional Director negotiated informal settlement agreements with the party charged in each complaint. The agreement with the Employer provided for the posting of notices stating that the Employer would refrain from engaging in each act of misconduct charged in the complaint and any other conduct in violation of the Act. The Employer agreed to comply with the terms of the notice and to submit a good faith proposal in continued negotiations on a collective bargaining agreement. The informal settlement agreement with the Union required the Union to post notices in its office (and to provide a copy to the Employer for posting in the plant) stating that the Union would refrain from engaging in specifically enumerated acts of violence and misconduct or any other conduct violating the rights of nonstriking employees guaranteed by Section 7 of the Act.[3] The Union agreed to comply with the terms of the notice.

On October 3, 1974, the unfair labor practice hearing in the two consolidated cases was commenced before Administrative Law Judge Leonard M. Wagman, and further hearings were held on October 30, November 1 and concluded on November 14, 1974. On November 14, 1974, at the outset of that session, the Regional Director submitted to the Administrative Law Judge for his approval

---

1. Section 8(a) provides in part:

   It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7] of this [act]; * * *
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *
   (5) to refuse to bargain collectively with the representatives of his employees * *

   29 U.S.C. § 158(a) (1973).

2. Section 8(b) provides in part:

   It shall be an unfair labor practice for a labor organization or its agents—

   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section [7] of this [act] * * *
   29 U.S.C. § 158(b) (1973).

3. Section 7 provides in part:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *.
   29 U.S.C. § 157 (1973).

the proposed informal settlement agreement in both cases.[4]

The Employer, as the charging party, objected to the proposed settlement agreement with the Union. The Employer contended that the agreement was improper in view of the flagrant and violent nature of the union misconduct charged in the complaint because (1) it failed to provide for entry of an enforceable order either by the Board or by a court, and (2) it failed to provide for notice of the terms of the settlement by newspaper publication or by certified mailing to all employees. In support of its objections, the Employer offered certain affidavits describing nearly 200 instances of the flagrant and violent nature of the Union's misconduct and requested the Administrative Law Judge to examine and consider them. This evidence, however, was excluded as beyond the scope of the hearing, the Administrative Law Judge determining that the hearing on the acceptance of the informal settlement agreement was not a fact-finding proceeding.

In approving the settlement agreements, the Administrative Law Judge listened patiently and at great length to the arguments of opposing counsel. He finally concluded by stating: "Well, I've heard all the arguments, and everybody appears to be equally unhappy. I think the ultimate objective here is to resolve this dispute and to get everybody back where they were before the breakdown.

And I take it into account at this point, some of the shortcomings. And I believe that were this a different situation, I might feel otherwise than I do. But I think that overall, that these two unilateral settlements are—are the best I think we can do under the circumstances." After further considering the matter of notices, and other "ministerial matters," the Administrative Law Judge concluded "that this is a matter of settlement, informal as they are, they are worthy of approval." He approved them.

The Employer filed a request with the Board for special permission to appeal the decision of the Administrative Law Judge pursuant to Board regulations.[5] This request was denied by the Board by telegraphic order on December 10, 1974, Member Kennedy dissenting.[6]

The Employer seeks review of the Board's approval of the informal settlement agreement with the Union.

The parties do not agree on the issues for review. Essentially the issues appear to us to be (1) whether the Board abused its discretion in accepting the proposed informal settlement agreement with the Union, which was executed by counsel for the Board's General Counsel following recommendations by the Regional Director and the Administrative Law Judge, pursuant to the Board's Statement of Procedures,[7] and (2) whether the Board's procedures denied the Employer due process by excluding the

---

4. The proposed settlement agreement in the case pending against the Employer was approved by the Administrative Law Judge. The approval of the settlement in that case, which was not opposed by the Union, is not before this court. Only the proposed settlement agreement with the Union remains at issue.

5. See 29 C.F.R. § 102.26 (1975).

6. The Board's telegraphic order read in relevant part:

Charging party's request for special permission to appeal the administrative law judge's decision to approve the informal settlement agreement is denied on the ground that it appears to be a proper exercise of his discretion. Member Kennedy dissents because he thinks that it was improper to accept an informal settlement of a complaint which included 160 allegations of section 8(b)(1)(A) conduct.

7. 29 C.F.R. § 101.9(d) (1975) provides:

(1) If the settlement occurs after the opening of the hearing and before issuance of the administrative law judge's decision and there is an all-party informal settlement, the request for withdrawal of the complaint must be submitted to the administrative law judge for his approval. If the all-party settlement is a formal one, final approval must come from the Board. If any party will not join in the settlement agreed to by the other parties, the administrative law judge will give such party an opportunity to state on the record or in writing its reasons for opposing settlement.

(2) If the administrative law judge decides to accept or reject the proposed settlement, any party aggrieved by such ruling may ask for leave to appeal to the Board as provided in Section 102.26 of this chapter.

affidavits offered by the Employer at the Administrative Law Judge hearing and by failing in its telegraphic order to state adequately its reasons for denying the Employer's request for permission to appeal the decision of the Administrative Law Judge.

## I.

We have examined the record in this proceeding. Setting aside at this time the question of exclusion of the 175 affidavits proffered by the Employer, we first turn to the purpose of the settlement agreement procedure and the role to be played by the charging party.

Federal courts of appeals have not always agreed upon the appropriate standard to be applied in reviewing an informal settlement agreement approved by the Board over the objection of the charging party. The Employer here cites our decision in *UAW v. NLRB*, 7 Cir., 231 F.2d 237, 242, *cert. denied*, 352 U.S. 908, 77 S.Ct. 146, 1 L.Ed.2d 117 (1956), as authority for the proposition that once a complaint has issued, a charging party has some standing to claim the right to a full hearing on its objections to any proposed settlement. This case is distinguishable from the case at bar since it was concerned with a dispute over the receipt in evidence of a *stipulation of facts* agreed to by the Board's General Counsel, but not concurred in by the charging party. Further, that case chose to follow the Third Circuit's decision in *Marine Engineers' Beneficial Association v. NLRB*, 3 Cir., 202 F.2d 546, *cert. denied*, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953). The Employer lays great emphasis on *Marine Engineers'* and our reliance upon it in *UAW v. NLRB*. The broad approach in *Marine Engineers'* has been rejected by other circuits, which have held that a charging party's role in Board considera-

tion of settlement agreements is somewhat more restricted.[8]

We are favorably impressed by the views of Judge Friendly in *Local 282, IBT v. NLRB*, 2 Cir., 339 F.2d 795 (1964). There he relied on Chief Justice Hughes' observation in *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 269, 60 S.Ct. 561, 84 L.Ed. 738 (1940), that the Board acts in unfair labor practice cases "on behalf of the public" and "seeks enforcement as a public agent, not to give effect to a 'private administrative remedy.'"[9] Judge Friendly concluded: "The policy of the Act, as construed in *Amalgamated Util. Workers*, requires that the Board be recognized as empowered to determine when the possibly slight merit of a charge is outweighed by the sure and speedy concessions, the industrial harmony restored, and the saving of Board resources which a settlement can achieve." 339 F.2d at 799.

Further, in *Concrete Materials of Georgia, Inc. v. NLRB*, 5 Cir., 440 F.2d 61, 67–8 (1971), Judge Morgan concluded: "[T]he presence of the charging party in the adjudication can be explained as an opportunity afforded the charging party to insure that his interests in the dispute will at least be considered before the matter is resolved."

In the case at bar, the Employer was given ample opportunity to present its objections at a hearing before the Administrative Law Judge. The Administrative Law Judge's reasons for approving the settlement adequately appear in the record of the hearing. His approval was based on the belief that harmony could be restored at the bargaining table. In view of the longstanding relationship between the parties, he concluded that a voluntary settlement could be relied upon. In connection with the like-

8. *ILGWU, Local 415–475 v. NLRB*, 163 U.S. App.D.C. 263, 501 F.2d 823, 831–2 (1974); *NLRB v. Oil, Chem. and Atomic Workers Int'l Union*, 1 Cir., 476 F.2d 1031, 1034–6 (1973); *Concrete Materials of Ga., Inc. v. NLRB*, 5 Cir., 440 F.2d 61, 68 n. 9 (1971), which the Ninth Circuit followed in *NLRB v. IBEW, Local 357*, 9 Cir., 445 F.2d 1015, 1016 (1971);

*Local 282, IBT v. NLRB*, 2 Cir., 339 F.2d 795, 797 (1964), which expressly declined to follow *Marine Engineers'*.

9. In one of the early Labor Board cases in our court, we approved this principle as announced by Chief Justice Hughes. *Stewart Die Casting Corp. v. NLRB*, 7 Cir., 132 F.2d 801, 804 (1942).

lihood of union disobedience to the terms of the agreement, the General Counsel pointed out at the hearing that the Board's files indicated no history of charges previously filed against the local chapter and no cases of violent conduct by the International Union in that region. Further, in the event that the Union did not keep its bargain, the settlement agreement could always be set aside and the case fully heard on its merits. In a full discussion of the sufficiency of the notice provided for by the settlement, the Administrative Law Judge concluded that posting copies of the notice in the Union's office and in the Employer's plant was adequate to apprise the Oshkosh public generally of the Union's agreement.

■ Based upon our review of the record, it is our considered judgment that the reasons given by the Administrative Law Judge for approval of the informal settlement agreement were adequately articulated to support his conclusions. This was a no-admission agreement obviously designed to effectuate the salutary purposes of this procedure.

## II.

■ Since we have concluded that an adequate record was made by the Administrative Law Judge, it appears to us that the reasons for his decision as stated on the record were fully considered by the Board in denying the Employer leave to appeal. This is evidenced by the grounds stated by Member Kennedy in giving the reasons for his dissent. It further appears from the Board's conclusion that the request for permission to appeal the Administrative Law Judge's approval of the informal settlement agreement was denied "on the ground that it appears to be a proper exercise of his discretion." On this record we are not persuaded that there was any denial of due process to the Employer in the Board's failure to further articulate its reasoning.

There is the further claim of denial of due process in the refusal of the Administrative Law Judge to consider the 175 affidavits offered by the Employer.

These affidavits were used by the General Counsel in his federal injunctive proceedings and were strongly urged by him there against the Union. Obviously they made out a strong showing of flagrant, abusive and violent misconduct by the Union, and their consideration there was sought by the General Counsel rather than the Employer. Nevertheless, the record shows that the injunction was eventually denied.

■ The current dispute seems to have been, in part at least, precipitated by the refusal of the General Counsel to urge consideration of the affidavits by the Administrative Law Judge. He took the position that they were in effect beyond the scope of review by the Administrative Law Judge and were not relevant to the question of approval of the informal settlement agreement. This agreement contained a "no admission" clause and did not purport to be a determination of factual issues or a Labor Board hearing on the merits. We agree.

The Administrative Law Judge placed these affidavits in the rejected exhibit file where they would be available, if needed, at any future hearing on the merits if such arose. Although it is outside the record, we have considered the parts of the General Counsel's brief in the federal injunctive proceedings, set out as an appendix to the Employer's brief in this appeal. It is quite clear that the affidavits did show flagrant misconduct on the part of the Union. This was patently understood by the Administrative Law Judge and the parties. Reading the affidavits was not necessary to reach this understanding. This was explored at length by counsel in argument before the Administrative Law Judge, as it is here, but this does not necessarily bring the affidavits within the scope of review by the Administrative Law Judge at his hearing.

Based upon our examination of the complete record before us on this appeal, we are not persuaded that there was any denial of due process to the Employer.

In view of the foregoing and of the broad discretion of the Board in these matters, we hold that there was no

abuse of discretion by the Administrative Law Judge or by the Board. The petition for review is denied.

Review denied.