**GEORGE RYAN CO., INC., Municipal Engineering and Construction Corp., and Evansville Contractors Association, Inc., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1021.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1979.

Decided Nov. 21, 1979.

Joseph A. Yocum, Evansville, Ind., for petitioners.

Michael Murchison, NLRB, Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, and TONE and WOOD, Circuit Judges.

TONE, Circuit Judge.

The issue before the court is whether the National Labor Relations Board abused its discretion either procedurally or substan-

tively by approving an informal post-complaint settlement agreement over the objection of the charging parties. We uphold the Board's decision.

George Ryan Company and Municipal Engineering and Construction Corporation, both members of the Evansville Contractors Association, filed charges with the National Labor Relations Board alleging that Teamsters Local Union No. 215 had violated §§ 8(b)(1)(A), 8(b)(4)(i) and (ii)(B), and 8(e) of the National Labor Relations Act. 29 U.S.C. § 158(b)(1)(A), 4(i) & (ii)(B), (e).[1] Based on these charges, the Board's Regional Office issued complaints against the union, which were then consolidated. These complaints alleged that the union had violated § 8(e) by including in its collective bargaining agreement with the Association a provision binding all subcontractors of the contracting employers to the terms of the agreement,[2] and, further, by demanding that Ryan cease doing business with a subcontractor who had no contract with the union. The alleged violations of § 8(b)(4)(B) and § 8(b)(1)(A) were various union efforts to enforce the illegal provision of the contract: a strike of one of Ryan's job sites, threats of physical injury to employees and supervisors of Municipal if they continued to work at a Municipal job site, physical blockage of entry to the Municipal job site, and threats of reprisals and bodily harm to employees and supervisors of Municipal who filed charges or gave testimony under the Act.

After the hearing before an Administrative Law Judge had commenced, the General Counsel's representative and the union attorney announced on the record that they had reached an informal settlement agreement. The agreement provided that the union would not "enter into, maintain, give effect to, or enforce Section 1 of Article IX of our contract with Evansville Contractors Association, Inc.," the provision described above, and declared that provision "unenforceable and void." The agreement also provided that the union would not induce employees of Ryan or of any other employer to strike for the purpose of forcing any employer to cease doing business with the subcontractor involved in this case or with any other employer. The union also undertook not to try to achieve the same objective by threatening, coercing, or restraining Ryan or any other person engaged in commerce or in an industry affecting commerce, and not to threaten, coerce, or restrain employees in the exercise of their rights under § 7 of the Act. *See* note 1 *supra.*

Attorneys for the companies objected to the agreement, primarily on the ground that it permitted the union to enforce §§ 2 and 3 of Article IX of the collective bargaining agreement,[3] "union standards" provisions which they argued had the same effect as the voided provision. They also argued that the promise not to interfere with employees' § 7 rights was an inadequate remedy for the § 8(b)(1)(A) violation.

1. Those subsections of § 8 make it an unfair labor practice for a union (1) to coerce employees in the exercise of their rights under § 7 of the Act, which include the right to organize and engage in other concerted activities for mutual protection and the right to refrain from such activities, (2) to strike or refuse to handle particular goods, to encourage others to do so, or to coerce anyone in commerce in order to force someone to cease dealing with another or to bargain with an uncertified labor representative, unless the union's acts constitute an otherwise lawful primary action, or (3) to enter into an agreement with an employer under which the employer agrees to cease doing business with someone else.

2. "This Agreement shall bind all sub-contractors while working for the Employer who is a

party to this Agreement. Any Employer who sub-lets any of his work on any project he has in the territory covered by this Agreement must let same subject to this Agreement." Article IX, § 1.

3. Article IX . . .

    Section 2. Should any employee or any subcontractor be paid less than the rates provided herein, then the signatory Employer shall be required to reimburse such employee for any deficiencies in rate which accrue.

    Section 3. No deficiency accrued shall be retroactive for more than thirty (30) days prior to the contractor receiving written notice from the Union that such deficiency exists.

After listening to these objections,[4] the ALJ approved the informal settlement agreement, stating only that she was doing so "in light of its satisfaction to the counsel for General Counsel, who is, after all, in charge of . . . the prosecution of this case."

The companies then asked the Board for leave to appeal the ALJ's approval of the informal settlement agreement pursuant to 29 C.F.R. § 101.9(d)(2), and all sides filed written submissions before the Board. The Board issued a telegraphic order summarily denying the companies' request for leave to appeal. The companies then petitioned this court to review the decision of the Board.[5]

The companies here contend that approval of the informal settlement by the ALJ and the Board was beyond the limits of their discretion both procedurally and substantively. According to the companies, the Board and its ALJ were required to explicate more fully the reasoning behind their decisions and to accord the companies, as charging parties, a larger role in the resolution of this dispute. The companies also argue that various substantive provisions of the settlement agreement are inadequate to remedy the violations charged.

### I.

The Board's discretion with respect to the approval of informal settlement agreements, while not without limit, is broad. In enforcing the Act the Board is not providing a "private administrative remedy," but is acting in the public interest to prevent unfair labor practices and ensure overall industrial harmony through efficient use of Board resources. *See Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 264–65, 267–69, 60 S.Ct. 561, 84 L.Ed. 738 (1940); *Oshkosh Truck Corp. v. NLRB*, 530 F.2d 744, 748 (7th

Cir. 1976). Private rights must give way when the Board reasonably determines that the purposes of the Act are best served by settlement. *See Local 282, International Brotherhood of Teamsters v. NLRB*, 339 F.2d 795, 799 (2d Cir. 1964).

### II.

Procedurally, petitioners ask us to remand to the Board for either further explication of its decision or an evidentiary hearing. The federal case law delineating the rights of charging parties dissatisfied with a settlement agreement reached by the Board and the charged party varies widely from circuit to circuit. *See* 14 A.L.R.Fed. 25, 53–60 (1973). In *UAW v. NLRB*, 231 F.2d 237 (7th Cir.), *cert. denied*, 352 U.S. 908, 77 S.Ct. 146, 1 L.Ed.2d 117 (1956), we required that a charging party be allowed to submit evidence in a full hearing on its objections to a proposed settlement where the disagreement concerned a stipulation of facts upon which the settlement was based. In *Oshkosh Truck, supra*, 530 F.2d at 748–49, however, where the charging party's objections pertained to the terms of an informal settlement agreement, we decided that it was not entitled to a full evidentiary hearing but only to "an opportunity . . . to insure that [its] interests in the dispute will at least be considered before the matter is resolved," 530 F.2d at 748 (quoting *Concrete Materials of Georgia, Inc. v. NLRB*, 440 F.2d 61, 68 (5th Cir. 1971)).[6] *See also Local 282, International Brotherhood of Teamsters, supra*, 339 F.2d at 798. On the facts before us in *Oshkosh Truck*, we held that the charging party's objections had been sufficiently considered because it had been given ample opportunity to present its objections at a hearing before the ALJ, who had adequately articulated the reasons for his decision, and because, given the pres-

---

4. 29 C.F.R. § 101.9(d)(1) requires only that an ALJ give the objecting party "an opportunity to state on the record or in writing its reasons for opposing the settlement."

5. Our jurisdiction is based on § 10(f) of the Act. *See International Ladies' Garment Workers Local 415 v. NLRB*, 163 U.S.App.D.C. 263, 266–71, 501 F.2d 823, 826–31 (D.C.Cir.1974).

6. Even though distinguishing *UAW, Oshkosh Truck* also cast doubt on its continued validity by rejecting the Third Circuit's broad approach in *Marine Engineers' Beneficial Ass'n v. NLRB*, 202 F.2d 546 (3d Cir.), *cert. denied*, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953), on which *UAW* had expressly relied.

**1253**

ence on the record of the ALJ's reasons, the summary affirmance by the Board showed adequate consideration of the charging party's objections.

The case at bar is distinguishable because, although the companies did have an opportunity to state their objections before the ALJ on the record, the attorneys for the General Counsel and the union presented no arguments countering those advanced by the charging party, and the ALJ gave no indication of her reasons for approving the settlement despite the charging party's objections. No doubt she should have articulated such reasons. The question before us is whether her failure to do so, coupled with the Board's like failure in denying leave to appeal, requires remand.

We hold that remand for articulation of reasons is unnecessary under the circumstances of this case. The charging parties' opportunity to state their objections before the ALJ and, in greater detail, in briefs before the Board provided them with sufficient opportunity to participate in the approval of the settlement in view of the nature of the substantive objections to the settlement. An administrative agency is generally required to articulate its reasons because effective judicial review of agency actions is thereby facilitated. See NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 443 n.6, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); 2 K. Davis, Administrative Law Treatise § 16.14, at 490 (1958). When the agency's reasons would not materially facilitate review, however, remand would be useless. See NLRB v. Wyman-Gordon Co.,

394 U.S. 759, 767 n.6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (Fortas, Warren, Stewart & White, JJ.). The companies' principal substantive contentions here are that provisions of the collective bargaining agreement left intact by the settlement violate the Act on their face. These contentions do not involve agency discretion but questions of statutory construction that, as we point out below, have already been decided by the courts. Other substantive contentions do concern discretionary acts, but the companies allege no possible line of reasoning that would invalidate the Board's action. Compare NLRB v. Metropolitan Life Insurance Co., 380 U.S. at 441–43, 85 S.Ct. 1061 (remand because one of the possible explanations for the Board's decision was unlawful).[7]

As to the companies' request for a remand for an evidentiary hearing, such a hearing is not required unless there is a dispute about a material fact. See, e. g., NLRB v. Oil, Chemical, & Atomic Workers International Union, supra note 7, 476 F.2d at 1036–37; NLRB v. IBEW Local 357, supra note 7, 445 F.2d at 1016. But see Leeds & Northrup Co. v. NLRB, 357 F.2d 527, 533 (3d Cir. 1966). Here the companies contend not that a dispute about any material fact exists, but that a full hearing is necessary to test the propriety of the ALJ's decision. The essential facts are not in dispute, and the companies have not alleged any facts that would lead us to question the exercise of the Board's discretion in approving the settlement.[8]

7. We do not accept the position of the D.C. Circuit, which requires only that the Board either provide the charging party a reasonable opportunity to be heard on its objections or state on the record its reasons for accepting the settlement. See International Ladies' Garment Workers Local 415 v. NLRB, supra note 5, 163 U.S.App.D.C. 271–72, 501 F.2d at 831–32; Textile Workers Union v. NLRB, 111 U.S.App.D.C. 109, 112, 294 F.2d 738, 741 (D.C.Cir.1961). Nor do we accept the requirement of three other circuits that the Board must always state on the record its reasons for approving a settlement despite the objections of the charging party. See NLRB v. Oil, Chemical, & Atomic Workers International Union, 476 F.2d 1031,

1036–37 (1st Cir. 1973); NLRB v. IBEW Local 357, 445 F.2d 1015, 1016 (9th Cir. 1971); Concrete Materials of Georgia, Inc. v. NLRB, supra, 440 F.2d at 68.

8. The companies also contend that the ALJ totally abnegated all independence in approving the settlement under review. It is undisputed that the judicial branch of the Board constitutes a semi-independent branch of the agency. 2 K. Davis, Administrative Law Treatise § 10.06, at 35 (1958); K. Davis, Administrative Law of the Seventies § 10.06 (1976). Yet although the ALJ here may not have acted independently, there is no showing that the Board, after consideration of the detailed briefs provided by all the various parties, failed to

### III.

The companies' primary substantive contention is that the settlement inadequately remedies the alleged § 8(e) violations because it allows the union to achieve the prohibited ends of § 1 of Article IX of the collective bargaining agreement through enforcement of §§ 2 and 3 of that Article.

■ Agreements to force cessation of business with other employers that have "primary," as opposed to "secondary," goals are permissible even though the terms of § 8(e) do not draw a distinction,[9] *NLRB v. Enterprise Association of Pipefitters*, 429 U.S. 507, 517, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977); *National Woodwork Manufacturers Association v. NLRB*, 386 U.S. 612, 633–42, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). Thus § 8(e) does not prohibit agreements that are made for the "primary" purpose of protecting work standards for union members. "Union standards" clauses, which provide that an employer may subcontract only to other employers whose wage and working standards are commensurate with those in the union's collective bargaining agreement, have been justified as serving to remove an incentive for the employer to contract out work done by union employees. *Teamsters Local 216 v. NLRB*, 171 U.S.App.D.C. 440, 442–43, 445–46, 520 F.2d 172, 174–75, 177–78 (D.C.Cir.1975); *Orange Belt District Council of Painters No. 48 v. NLRB*, 117 U.S.App.D.C. 233, 235, 237–38, 328 F.2d 534, 536, 538–39 (D.C.Cir.1964); *Retail Clerks Local 770 v. NLRB*, 111 U.S.App.D.C. 246, 251–52, 296 F.2d 368, 373–74 (D.C.Cir.1961).

■ In the case at bar the settlement agreement enforces a permissible union standards provision. While § 1 of Article IX of the collective bargaining agreement required the companies to make all subcontractors party to the collective bargaining agreement, §§ 2 and 3 served only to dissuade the companies from contracting out union work by requiring them to reimburse subcontractors' employees for any difference between the rate paid them and the rate specified in the collective bargaining agreement for the companies' employees.

■ The companies also argue that the Board should have invalidated § 5 of Article XI of the collective bargaining agreement, which permits the union to use "economic recourse" to remedy any breach of the contract. This argument, however, is based on the incorrect assumption that §§ 2 and 3 of Article IX can be justified only by the construction industry proviso of § 8(e), *see* note 9 *supra*, and thus cannot be enforced through economic action. *See Los Angeles Building & Construction Trades Council*, 239 N.L.R.B. No. 42, at 19–22 (Nov. 13, 1978). Inasmuch as those sections constitute valid union standards provisions with primary objectives, economic recourse is permitted so long as it is directed to benefitting union members in their relations with their employer rather than to achieving union objectives elsewhere. *See NLRB v. Enterprise Association of Pipefitters, supra*, 429 U.S. at 528–31 & n.16, 97 S.Ct. 891.

■ The companies' other arguments are equally without merit. That the settlement does not provide for a "consent decree" or the entry of a court order if the union breaches the terms of the settlement is not a reason for overturning it. If it is breached, it can be set aside and the case heard on the merits. *See Oshkosh Truck v. NLRB, supra*, 530 F.2d at 749; 29 C.F.R. § 101.9(e)(2). The possibility that the union may unlawfully try to apply §§ 2 and 3 of Article IX beyond the equalization of rates of pay does not render those provisions unlawful. They are to be construed "to require no more than what is allowed by law." *Teamsters Local 216 v. NLRB*, 171 U.S.App.D.C. 440, 446, 520 F.2d 172, 178 (D.C.Cir.1975); *General Teamsters Local 982*, 181 N.L.R.B. 515, 517 (1970), *enf'd sub nom. Joint Council of Teamsters No. 42 v. NLRB*, 146 U.S.App.D.C. 275, 450 F.2d 1322

---

come to an independent decision regarding the merits of the companies' objections.

**9.** Section 8(e) does include a proviso permitting secondary agreements in the construction industry, but that proviso is not relied on here.

(D.C.Cir.1971).[10] The companies also complain that the notice of the agreement provided to employees was impermissibly vague and incomplete. The form of the notice is primarily for the Board's discretion, and we do not find the notice so deficient as to require our intervention. Their final substantive complaint is that the agreement contains a non-admission clause. This too is a matter for the Board's discretion.

Petition for Review Denied.

10.  If the union attempts to administer §§ 2 and 3 coercively for secondary purposes, it would violate its commitment in the settlement agreement not to violate § 8(b)(4)(B) of the Act. *See NLRB v. Enterprise Ass'n of Pipefitters,* 429 U.S. 507, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977).